UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
ENOCH KELLY HANEY,                      )
                                        )
         Plaintiff,                     )
                                        )
         v.                             )       Civil Action No. 05-2501(JDB)
                                        )
                                        )
MARRIOTT INT'L, INC.,                   )
                                        )
         Defendant.                     )
_____ )
```

**MEMORANDUM OPINION**

    This diversity case arises from a slip-and-fall incident at the Marriott Metro Center in Washington, D.C.  On November 12, 2002 plaintiff, Enoch Kelly Haney, fell in the bathtub of his hotel room, sustaining injuries to his head and shoulder in the process.  The next day, plaintiff was allegedly told by a Marriott employee that the hotel would pay his hospital costs if he sought medical assistance.  Plaintiff then proceeded to go to the emergency room for treatment of his injuries before flying home to Oklahoma.  Because his shoulder pain lingered for several weeks, plaintiff sought further medical treatment in Oklahoma, and ultimately had surgery to repair the damage allegedly caused by his fall.  Plaintiff then brought suit against the Marriott in a District of Columbia court, alleging both negligence and breach of contract claims.  Defendant removed the case to this Court and discovery ensued.  At the close of discovery, following unsuccessful settlement negotiations, defendant moved for summary judgment on both grounds.  For the reasons set forth below, the Court will grant defendant's motion.

1

**BACKGROUND**

The operative facts of this case are not in dispute. In November, 2002 plaintiff -- then an Oklahoma State Senator -- was visiting Washington to meet with Oklahoma's congressional delegates. Def.'s Mot. for Summ. J. Ex. 1 at 5. During the course of that trip, plaintiff was a guest at the Marriott at Metro Center, which is owned by defendant Marriott International, Inc. (hereinafter "Marriott"). Id. at 3. On the afternoon of November 12, 2002 plaintiff, intending to shower, entered the bathroom of his hotel room and turned on the water in the bathtub. Id.; Compl. ¶ 7. Plaintiff had showered in this tub on previous occasions without incident. Def.'s Mot. for Summ. J. Ex. 1 at 5. Upon entering the tub this time, however, after he had "both feet" on the surface of the tub plaintiff felt his feet "slip up" beneath him. Id. Struggling to avoid ramming into the hand rail in the shower on his way down, plaintiff fell to the floor of the tub, sustaining a minor blow to his head and more extensive injuries to his left shoulder. Id. at 6-7. Plaintiff explained in his deposition that at the time of his fall he had yet to use any soap or shampoo and that he did not notice "[a]nything else unusual about the floor of the tub." Id. at 6.

After recovering from the fall and drying himself off, plaintiff phoned his associate Thomas Smith to assist him. Def.'s Mot. for Summ. J. Ex. 1 at 7. Mr. Smith proceeded to the front desk of the Marriott and informed the employee there that plaintiff had fallen in the tub and inquired of her as to what steps he needed to take at this time. Id. at 8. The employee advised that plaintiff wait until the next day to gauge the seriousness of his injuries and he did so. Id. The next morning plaintiff's arm was "really swollen up," and he spoke with Mr. Fletcher at the Marriott front desk, who allegedly informed plaintiff that the Marriott would "take care of the cost" of plaintiff's hospital visit. Id. Plaintiff then went to The George Washington University

Hospital where he was diagnosed with a left shoulder strain. Id. at 9. After that, plaintiff returned home to Oklahoma.

Unfortunately, plaintiff continued to experience pain in his shoulder for several weeks following the fall and decided to seek further medical assistance from Dr. German in Oklahoma. Def.'s Mot. for Summ. J. Ex. 1 at 9. Following a series of physical therapy sessions that failed to relieve his shoulder pain, plaintiff underwent arthroscopic surgery on his left shoulder in 2003. Id. at 9-10. For a period of time following the surgery, plaintiff lost use of his left arm entirely because it was in a sling. Id. at 10. Moreover, due to the combination of the injury and the surgery's after-effects, plaintiff -- who, in addition to being a legislator, is a recognized artist who owns his own art gallery business (id. at 4) -- was unable to work on his sculptures and other projects. Id. at 10. Thus, plaintiff's income suffered in 2003 (as compared to 2002) due to the fact that he could not sculpt and sell his artwork during the period following his injury and surgery. Id. at 10-11.

After plaintiff's fall, Marriott officials contacted him on several occasions with offers to pay him $300 -- plaintiff's medical bill from The George Washington University Hospital totaled $192.25 -- in return for a release from all potential claims. See Def.'s Mot. for Summ. J. Exs. 5-7, 9. Plaintiff declined to accept Marriott's offer. Def.'s Mot. for Summ. J. Ex. 8. Instead, plaintiff brought a suit in negligence in the Superior Court of the District of Columbia alleging that the bathtub in his hotel room was "not safe for normal use" because it lacked a sufficiently slip-resistant surface and consequently caused him to fall that afternoon. Pl.'s Opp'n at 4. He has also asserted a breach of contract claim concerning Marriott's alleged promise to pay his medical expenses, which he now estimates total $23,000. Id. at 13 n.2. Plaintiff seeks damages for

"medical expenses, physical therapy, loss of income, pain and suffering, prescription costs, and other similarly related consequential damages." Compl. ¶ b. Defendant removed the case to this Court, and following a lengthy discovery process now moves for summary judgment on both counts of plaintiff's Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50

4

(citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

In Count I of his Complaint, plaintiff seeks damages on the grounds that defendant's negligence in maintaining the bathroom shower caused his fall and his resulting injuries. In Count II, he alleges that defendant breached an agreement to pay for plaintiff's medical costs associated with the treatment of his injuries. The Court will address both counts in turn.

### A. Negligence

Defendant makes two main relevant arguments in support of summary judgment. First, defendant contends that plaintiff has failed to demonstrate an appropriate standard of care that would allow a jury to determine whether defendant breached any duty owed to plaintiff. In addition, and in any event, defendant claims that the bathtub was not unreasonably dangerous. The second principal argument that defendant makes is that, even assuming for the purposes of argument that the tub's surface was unreasonably slippery, defendant lacked notice of that purportedly dangerous condition. As discussed below, defendant is correct on both points.

*1. Standard of Care and Breach of Duty Issues*

In the District of Columbia, a plaintiff "in a negligence action bears the burden of proof on three issues: 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'" Toy v. Dist. of Columbia, 549 A.2d 1, 6 (D.C. 1988) (quoting Meek v. Shepard, 484 A.2d 579, 581 (D.C. 1984)). A moving party may prevail on summary judgment by "[p]ointing to the absence of evidence proferred by the nonmoving party" on an issue on which the nonmoving party bears the

burden of proof.  Griggs v. Wash. Metro. Area Transit Auth., 2002 WL 31174533 at *2 (D.D.C. 2002).  Moreover, the nonmoving party may not "rely solely on allegations or conclusory statements" to defeat a motion for summary judgment.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  Instead, the nonmoving party "must present specific facts that would enable a reasonable jury to find in its favor."  Id.  In the District of Columbia, this includes the duty to present expert testimony to establish a relevant standard of care where "the ultimate issues involves a subject . . . 'beyond the ken of the average person.'"  Griggs, 2002 WL 31174533 at *3 (quoting Dist. of Columbia v. Peters, 527 A.2d 1269, 1273 (D.C. 1987)).

      At the outset, the Court notes that plaintiff was a lawful guest in defendant's establishment.  Under District of Columbia law, "there is only one standard of care for persons lawfully upon the landowner's or land occupier's property, and that is reasonable care under the circumstances."  Sandoe v. Lefta Assocs., 559 A.2d 732, 742 (D.C. 1989).  Moreover, as the owner of the hotel, defendant was obliged to keep the premises free from "dangerous conditions that [were] 'discoverable in the exercise of ordinary care.'"  Id.

      Defendant argues that plaintiff has failed to meet his burden "to prove both an applicable standard of care as well as to show that Marriott violated that standard of care."  Def.'s Reply Br. at 5.  To begin with, Marriott contends that plaintiff's "case necessarily requires the testimony of an expert witness."  Id.  As stated above, Marriott's duty to plaintiff under District of Columbia law was to exercise reasonable care under the circumstances and to ensure that the hotel room was free from any dangerous conditions.  Thus, the first step in this inquiry is to determine precisely what "reasonable care" entails under the circumstances of this case.  It is at precisely that step, however, that plaintiff has failed to make the appropriate showing to defeat a motion for

summary judgment.

    Plaintiff's proof regarding the applicable standard of care boils down to bare conclusory allegations concerning the state of the bathtub's surface on November 12, 2002. As an initial matter, in his Complaint plaintiff alleges that defendant had a duty to provide him with the ability to use a bathtub with a "sufficiently large area of non-slip surface in the tub." Compl. ¶ 17. In plaintiff's view, defendant breached this duty because the bathtub "was not equipped with slip resistant surface treatment" on the date in question. Pl.'s Opp'n at 4. Moreover, he also contends that the tub "did not meet industry standards for traction and slip resistance," and thus the tub was "not safe for normal use" on the date of plaintiff's accident. Id.

    The claims listed above make up the entirety of the plaintiff's proof on the standard of care issue. Indeed, those allegations also encompass plaintiff's entire proof on the breach of duty issue as well. Plaintiff has produced no expert testimony or reports to substantiate his claim that the tub lacked adequate slip resistance. Indeed, plaintiff has not put forward any evidence -- in the form of deposition testimony, affidavits, or interrogatory responses -- concerning the physical characteristics of the bathtub on the date of the accident, nor has he explained via evidence what condition the tub should have been in had defendant exercised due care. Hence, plaintiff has not met the burden of establishing the appropriate standard of care in the first instance.

    Although it is true that a plaintiff need not rely on expert testimony to establish the appropriate standard of care in situations "within the realm of common knowledge and everyday experience," Dist. of Columbia v. White, 442, A.2d 159, 164 (D.C. 1982), this case does not present one of those instances. Plaintiff may be laboring under the assumption that because showering is a common everyday task, his mere allegation that this particular bathtub was

7

unreasonably slippery is sufficient to establish the appropriate duty of care. That assumption, however, is mistaken as a matter of District of Columbia law. Greene, 164 F.3d at 675 ("[T]he nonmoving party may not rely solely on allegations or conclusory statements."). The District of Columbia Court of Appeals has recognized a trend in District of Columbia law to require expert testimony to establish the applicable standard of care in an increasing variety of circumstances. Hill v. Metro. African Methodist Episcopal Church, 779 A.2d 906, 908 n.1 (D.C. 2001) ("In *District of Columbia v. Hampton*, 666 A.2d 30, 35-36 (D.C. 1995), we referred to the 'general rule requiring expert testimony to prove the applicable standard of care,' noting that 'over the last decade or so . . . the requirement has been applied more broadly to a variety of situations' with numerous examples, and noting also 'the substantially smaller number of cases falling within the common knowledge exception.") (emphasis added). Moreover, this Court has noted that same trend: "[T]he District of Columbia Court of Appeals has required plaintiffs to present expert testimony regarding standards of care for relatively common situations." Griggs, 2002 WL 31174533 at *4. In any event, as demonstrated below, this case presents complicated threshold issues that do not fall within the "common knowledge" exception. As such, expert testimony is required to prove the relevant standard of care and plaintiff's failure to produce such evidence warrants granting summary judgment to the defendant. Id. at 3 ("By failing to present expert evidence of the relevant standards of care, the plaintiff has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting Celotex, 477 U.S. at 322).

In contrast to plaintiff, Marriot has in fact commissioned an expert report concerning the tub's surface. Defendant retained SEA, Ltd. ("SEA") to examine the tub, and in particular to

perform an evaluation of the "slip resistance" of the bathing surface. Def.'s Mot. for Summ. J. Ex. 4 at 4. Mr. Bayan, SEA's "Principal Technical Consultant," performed the investigation on January 9, 2007. Id. at 8. The examination was designed to determine whether, among other things, the bathing surface was sufficiently slip-resistant under the prevailing standards promulgated by ASTM International ("ASTM"), "an international standards developing organization that advances and publishes technical standards for . . . slip-resistant bathing facilities." Def.'s Mot. for Summ. J. at 7 n.8. In his report, Mr. Bayan concluded that, based on friction testing, "the traction available to a user of the shower area, in the presence of soapy water, is on average 3 times the value required by ASTM for slip resistant bathing facilities." Id. at 7. Moreover, he also reported that "the static coefficient of friction [was] on average 4.5 times the required ASTM minimum required level" in the presence of "water alone." Id.

Plaintiff dismisses the findings in Mr. Bayan's report. To begin with, plaintiff correctly points out that Mr. Bayan's study was conducted more than four years after plaintiff's fall. Pl.'s Opp'n at 8. Although Mr. Bayan concluded that the tub was in the same condition as it was on the afternoon of plaintiff's accident, plaintiff insists that Mr. Bayan's basis for that opinion -- casual conversations with the hotel's "'director of maintenance, a 'safety person' and a member of the cleaning crew," id. -- is insufficient to credit that conclusion.[1] Plaintiff goes on to assert that Mr. Bayan relied "upon an outdated, withdrawn safety standard" to reach his conclusion, but plaintiff does not seem to contest defendant's assertion that Mr. Bayan also, and chiefly, relied upon a standard that is still valid. Id. at 9; Def.'s Reply at 3. Finally, plaintiff takes Mr. Bayan to

---

[1] It should be noted, however, that defendant maintained in its interrogatory responses that there has been no "repair work or changes to Mr. Haney's bathroom" during the interim period. Def.'s Motion for Summ. J. Ex. 3 at 3.

task for failing to examine the "curved portion extending between the wall of the tub and its floor," Pl.'s Opp'n at 9, although Mr. Bayan did opine in his deposition that the coefficient of friction on that portion of the bathtub would be substantially the same as the coefficient for the surface of the tub. Def.'s Reply at 4.

Ultimately, plaintiff's objections to the report miss the mark. The Court need not decide whether defendant's expert report taken alone would preclude a reasonable jury from finding for the plaintiff. In addition to establishing a factual basis for defendant's motion, Marriott's filings with this Court also highlight a critical flaw in the plaintiff's case: the complete absence of proof concerning the applicable standard of care. See Griggs, 2002 WL 31174533 at *2 (explaining that the moving party may prevail on summary judgment by "pointing to the absence of evidence proferred by the nonmoving party"). Although plaintiff contends that the bathtub "did not meet industry standards," he has produced no evidence whatsoever to back up that contention. Plaintiff's allegations regarding the absence of a slip resistant surface on the tub are similarly unsupported. Tellingly, plaintiff declares that "[d]efendant cannot show that it breached no legal duty to Mr. Haney as a matter of law." Pl.'s Opp'n at 14. It is, however, plaintiff's burden to prove the applicable standard of care and that defendant breached it. Toy, 549 A.2d at 6.

Hence, plaintiff's lack of supporting expert evidence regarding the applicable standard of care is fatal to his case. Proof of compliance with suitable ASTM standards and the appropriate coefficients of friction for bathtub surfaces are issues that are well beyond the "ken of the average person," particularly when considered against the backdrop of District of Columbia law requiring expert testimony in increasingly "common situations." Griggs, 2002 WL 31174533 at *4. While taking a shower is indeed a common situation for a lay person, measuring the coefficient of

friction in the tub while doing so is most certainly not. In Griggs, the court granted summary judgment because it held that the "inability to establish a standard of care for an issue beyond the ken of the average person is fatal to a lawsuit." Id. at *5. So, too, here. Accordingly, defendant is entitled to summary judgment owing to the plaintiff's failure to establish both an applicable standard of care and evidence of a breach of that standard through appropriate expert evidence.

    *2. The Notice Question*

Even if the Court were to assume that the tub was indeed unreasonably dangerous under an applicable duty of care, defendant would still be entitled to summary judgment on the negligence count because there is no evidence that Marriott was on notice of the unreasonable risk of harm. To establish negligence on the basis of a defective or dangerous condition, a plaintiff must "present evidence that a dangerous condition existed for such a duration of time that had reasonable care been exercised the hazard would have been discovered." Wilson v. Wash. Metro. Area Transit Auth., 912 A.2d 1186, 1190 (D.C. 2006). In other words, a plaintiff must demonstrate that the dangerous condition existed for a sufficiently long period of time to put the defendant on actual or constructive notice of the defect. In the instant case, plaintiff has failed to meet this burden.

Plaintiff does not dispute the fact that there had been no reported slip-and-fall incidents in his hotel room prior to his accident. He argues, however, that absence of prior accidents does not indicate that due care was exercised in this particular instance. Pl.'s Opp'n at 10. That assertion is correct, but plaintiff overlooks the fact that the lack of prior incidents is relevant to the question of whether defendant had actual notice of the purported defect. Next, plaintiff contends that defendant's housekeepers examined his room "no more than two days prior to the date of the

accident." Id. at 11. But plaintiff had already taken several showers in the same tub without incident prior to his fall. Id. In addition, as plaintiff admitted in his deposition, there was nothing unusual about the surface of his tub <u>immediately following</u> his fall either. Def.'s Mot. for Summ. J. Ex. 1 at 6. Thus, it is difficult to see what defendant's housekeepers would have observed by inspecting and cleaning the bathtub if the dangerous condition -- assuming one existed -- was not readily apparent; in any event, even if assumed to be material, this fact is not sufficient to put the defendants on notice of any potential defect.

Plaintiff relies on <u>Hines v. Safeway Stores, Inc.</u>, 379 A.2d 1174 (D.C. 1978), as support for his claim that the notice issue is not appropriate for summary disposition. As plaintiff points out, in <u>Hines</u> the District of Columbia Court of Appeals noted that the issue of constructive notice is "peculiarly within the province of juries." Id. at 1175. <u>Hines</u>, however, is distinguishable from this case. To begin with, <u>Hines</u> involved a pool of liquid on a supermarket floor. Shopkeepers are under a continual duty routinely to inspect their store for potential hazards because members of the public are frequently entering and exiting the premises. See <u>Galloway v. Safeway Stores, Inc.</u>, 632 A.2d 736, 739 (D.C. 1993) ("[A] grocer has a duty to take 'reasonable precautions to maintain the store premises in a condition so as not to create an unreasonable risk of harm to customers.'") (quoting <u>Smith v. Safeway Stores, Inc.</u>, 298 A.2d 214, 216 (D.C. 1972)); <u>see also Sandoe</u>, 557 A.2d at 742 (discussing a store's duty to inspect "the public areas of stores to make them safe for invitees" in the context of reasonable care). Hotel rooms, by contrast, are not typically open to the public, which would seem to mitigate against a duty of routine inspection. More importantly, however, in <u>Hines</u> the court explained that there had been "<u>direct proof</u> that the condition did exist for at least twenty minutes." 379 A.2d at 1175.

In the instant case, plaintiff has come forward with no proof that a dangerous condition existed at all, let alone how long it persisted. Thus, <u>Hines</u> does not preclude summary judgment in this case. In short, plaintiff has produced no evidence that would permit a reasonable jury to infer that defendant -- even assuming that a dangerous condition existed -- had either actual or constructive knowledge of the condition. Once again, plaintiff's bare allegations -- here of notice -- are not enough to survive a motion for summary judgment. See <u>Griggs</u>, 2002 WL 31174533 at *3. Accordingly, summary judgment is appropriate on this issue.

In sum, plaintiff cannot defeat defendant's motion for summary judgment because, at bottom, his filings before this Court are devoid of a sufficient evidentiary basis to establish the existence of any material facts that would require resolution at trial. In his Opposition briefing, plaintiff lists four "material facts" that are in dispute: (1) that the bathtub "was not equipped with slip resistant surface treatment"; (2) that the bathtub "did not meet industry standards" for slip resistance; (3) that the bathtub was "not safe for normal use"; and (4) that the bathtub is "no longer in the same condition as it was on the date of the accident." Pl.'s Opp'n at 4. Tellingly, as demonstrated above, those supposed factual disputes are ultimately either unsupported factual allegations or mere legal conclusions. Simply put, defendant is correct that plaintiff's "claims are without evidentiary support," despite a lengthy discovery period.[2] Def.'s Mot. for Summ. J. at 10. Hence, summary disposition is appropriate at this juncture, and the Court will therefore grant

---

[2] The court in <u>Garvin v. Hyatt Corporation</u>, 2000 WL 798640 (Mass. App. Div. 2000), a case cited by defendant with remarkably similar facts to this case, reached the same conclusion. In that case, the court granted the defendant's motion to dismiss because the plaintiffs failed to "determine the coefficient of friction of the bathtub" and otherwise "failed to establish the existence of an actionable defect or condition for which the defendant could be found liable." <u>Id.</u> at *2-3.

summary judgment to defendant on Count I.[3]

## B. Breach of Contract

In Count II, plaintiff alleges that defendant breached its promise to pay for his medical treatment. Compl. ¶ 20-23. Furthermore, in opposing summary judgment, plaintiff adds that the doctrine of promissory estoppel entitles him to relief. As explained below, both of plaintiff's theories fail, and the Court will grant summary judgment to defendant on Count II. At the outset, it is worth noting that this contract claim does not address liability for plaintiff's fall itself. Instead, the basis for recovery in Count II rests on an alleged promise made after plaintiff's slip. Consequently, the proper measure of recovery, if any, would be the cost of plaintiff's medical treatment, rather than any damages for lost wages or pain and suffering.

*1. Breach of Express Contract*

In the District of Columbia, the party seeking to enforce a contract must prove that a contract exists by demonstrating: "(1) agreement as to all material terms; and (2) intention of the parties to be bound." New Econ. Capital, LLC v. New Markets Capital Group, 881 A.2d 1087, 1094 (D.C. 2005) (quoting Jack Bauer, Inc. v. Office Space Dev. Corp., 664 A.2d 1236, 1238 (D.C. 1985)). In addition to those requirements, "an express contract requires an offer and acceptance, and must be supported by consideration." Ghahremani v. Uptown Partners, LLC,

---

[3] The Complaint also lists the Marriott's failure "to properly respond to [plaintiff's] need for assistance as a result of his fall" as an actionable breach of duty. It is difficult to determine what to make of this assertion because, as defendant points out, Marriott is "not in the business of providing medical care or advice." Def.'s Mot. for Summ. J. at 8. Plaintiff, moreover, does not elaborate on this allegation in the Complaint or in his briefing. In any event, this claim is subject to the same objection as the rest of plaintiff's allegations in Count I: plaintiff has failed to carry his burden of proof on the standard of care and breach of duty issues. In the absence of proof of an applicable standard of care, plaintiff's assertion that defendant "breached its duty to [plaintiff]" is a conclusory allegation that cannot survive a motion for summary judgment.

2005 WL 3211463 at *16 (D.D.C. 2005) (citing Goozh v. Capitol Souvenoir Co., Inc., 462 A.2d 1140, 1142 n.3 (D.C. 1983)). Here, plaintiff has failed to demonstrate both the material terms of the agreement and the presence of consideration to support the contract.

Plaintiff's proof of this alleged contract consists entirely of his deposition testimony where he states that a Marriott official, Mr. Fletcher, told him that "they [Marriott] would take care of the cost" if plaintiff "wanted to go to the hospital." Def.'s Mot. for Summ. J. Ex. 1 at 8. Beyond that bare assertion, plaintiff offers no additional evidence that elaborates on the terms of the supposed agreement. The record is silent with respect to crucial elements of the agreement, such as the maximum amount that defendant was willing to reimburse plaintiff, as well as the period of time for which defendant would cover plaintiff's medical costs. See Affordable Elegance Travel v. Worldspan, L.P., 774 A.2d 320, 327 (D.C. 2001) (noting that material terms of a contract include "price, payment terms, quantity, and duration"). Moreover, as defendant correctly points out, plaintiff did not represent directly to defendant that he was accepting the offer. Without any further evidence that establishes the threshold requirements for a valid contract, plaintiff cannot defeat a motion for summary judgment on a breach of contract claim. Accord New Econ. Capital, 881 A.2d at 1096 ("The record reveals that [the parties] did not enter into an enforceable oral contract for consulting services, because the alleged oral agreement does not meet the requirements of completeness with respect to 'all material terms; and . . . intention of the parties to be bound' by an agreement.") (quoting Jack Bauer, Inc., 664 A.2d at 1238).

Even if the plaintiff had established the requisite material terms of an oral agreement between the parties, however, defendant would still prevail on summary judgment because the putative contract was unsupported by consideration. As the record makes plain, plaintiff

tendered nothing in return for defendant's alleged promise to pay his medical costs. There is no evidence presented that plaintiff offered to perform or forbear from any action that would constitute sufficient consideration. A mere promise to pay unsupported by consideration is an unenforceable gratuitous promise under District of Columbia law. Accord Zoob v. Jordan, 841 A.2d 761, 765 (D.C. 2004) ("[A] mere promise to make a gift is unenforceable."). Hence, defendant is entitled to summary judgment on this ground.

  *2. Promissory Estoppel*

  Although he did not list it as a basis for relief in his Complaint, plaintiff now argues that he is entitled to recover on defendant's promise under the doctrine of promissory estoppel. Pl.'s Opp'n at 12. In the District of Columbia, there are four inquiries that must be satisfied before the doctrine of promissory estoppel is applied: "First, was there a promise? Second, should the promisor have expected the promisee to rely on the promise? And did the promisee so rely to his detriment? Finally would injustice result from a failure to enforce the promise?" Bender v. Design Store Corp., 404 A.2d 194, 196 (D.C. 1979). Moreover, in its normal application, promissory estoppel "functions to replace one or more of the formal requirements of a contract, usually consideration." Id.

  In this case, plaintiff runs into difficulty meeting these requirements at the outset. Although plaintiff's deposition testimony establishes that Mr. Fletcher made some form of promise to pay, plaintiff himself admits that the representation was made in reference to the cost of a hospital visit. Def.'s Mot. for Summ. J. Ex. 1 at 8 ("[Mr. Fletcher] . . . asked if I wanted to go to the hospital and said they would take care of the cost.") (emphasis added). In fact, defendant has made good on that promise and then some. As the record makes plain, defendant later offered

16

to pay plaintiff $300, which is well in excess of the $192 cost of the hospital visit itself. Pl.'s Opp'n at 13 n.2. Plaintiff's argument thus necessarily requires one to believe that Mr. Fletcher's promise to pay the cost of a hospital visit implied a promise to pay for all subsequent medical treatment that plaintiff believed necessary as well. There is no evidence that was so, and the Court is skeptical that a reasonable juror could make such an inference.

In any event, however, the Court need not decide that question, because even assuming that plaintiff satisfies the first element of promissory estoppel, he cannot overcome the detrimental reliance hurdle. To establish detrimental reliance, plaintiff would need to prove that absent defendant's promise to pay, he would not have sought any medical treatment for his shoulder injury. Id. at 13. That is simply untenable. By plaintiff's own admission, the shoulder pain seriously inhibited his artistic endeavors, which account for a significant portion of his income. Def.'s Mot. for Summ. J. Ex. 1 at 9-12. To suggest that plaintiff would not have undertaken to obtain treatment of his own accord, without any promise by Marriott to pay, undermines the foundation of plaintiff's entire case -- that he suffered a serious injury that disrupted his normal lifestyle. As a matter of law, plaintiff cannot meet the detrimental reliance showing on this record. Consequently, plaintiff's promissory estoppel argument fails and defendant is entitled to summary judgment on Count II of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

                                        /s/     John D. Bates
                                               John D. Bates
                                      United States District Judge

Dated:  October 9, 2007